UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James Callahan,                    :
       Plaintiff,               :
                                :
       v.                       :      File No. 1:10-cv-141-jgm
                                :
Leesa L. Callahan,                 :
Does I-X, inclusive,               :
Roe Corps I-X, inclusive,          :
       Defendants.              :

<u>OPINION AND ORDER</u>
(Doc. 6)

Plaintiff James Callahan, proceeding *pro se*, brings this action asking the Court to set aside or modify a state court divorce judgment. Specifically, Mr. Callahan claims the current distribution of his military pension violates federal law and, therefore, needs to be revised. He also claims the state court judgment violated the Servicemembers Civil Relief Act, 50 U.S.C. app. § 522 ("SCRA") because it was entered while he was on active duty.

Defendant Leesa Callahan, Plaintiff's ex-wife, has moved to dismiss the Complaint, arguing (1) this Court lacks jurisdiction under the <u>Rooker</u>-<u>Feldman</u> doctrine, (2) the state court had jurisdiction to issue the final divorce order; (3) the state court's action did not violate the SCRA, and (4) the divorce order did not violate federal law, since it was the result of an agreement between the parties. The motion to dismiss is unopposed.

For the reasons set forth below, the motion to dismiss is GRANTED, and this case is DISMISSED without prejudice.

<u>Factual Background</u>

Mr. Callahan is a career Air Force officer who retired from active duty in August 2006.  <u>Callahan v. Callahan</u>, 958 A.2d 673, 674 (Vt. 2008) ("<u>Callahan I</u>").  The Callahans first married in 1990, and had three children during the marriage.  <u>Id.</u>  They divorced in April 1997, but remarried three months later.  (Doc. 1 at 2.)

In August 1997, Mr. Callahan was deployed to South Korea for a two-year command position.  <u>Callahan I</u>, 958 A.2d at 674.  He alleges in his Complaint that in May 1998, his wife, "claiming she was unhappy and wanted to pursue a nursing career," moved back to the United States with the children and settled in Vermont.  (Doc. 1 at 2.)

In August 1998, Mrs. Callahan wrote to her husband and informed him that she wanted a divorce.  The letter allegedly proposed terms similar to those the couple had agreed to in their first divorce, including Mr. Callahan retaining his full military pension. (<u>Id.</u>)  The final divorce stipulation, however, provided that Mrs. Callahan would receive twenty-five percent of her husband's monthly pension upon his retirement from the military. (<u>Id.</u>)  Mr. Callahan signed the stipulation in May 1999.  <u>Callahan I</u>, 958 A.2d at 674.

The stipulation was not immediately endorsed by the state
court.  In November 1999, prior to final hearing, Mr. Callahan,
through his attorney,

> moved to set aside the terms of the stipulation,
> arguing that he was not represented at the time
> he signed the agreement, and that he would not have agreed
> to its terms if he had known that [his] wife was living
> with another man and was pregnant with the man's child.
> The court denied the motion on the grounds that he had
> an opportunity to consult with counsel prior to signing
> the stipulation and did not establish any legal basis
> for setting the stipulation aside.

Id. at 674-75.  The state court entered a final divorce order,
incorporating the terms of the stipulation, on January 28, 2000.
There was no appeal.  Id. at 675.

Upon Mr. Callahan's retirement in 2006, a dispute arose
regarding the payment of his pension benefits.  When Mrs.
Callahan filed a motion to enforce that provision of the divorce
order, arguing she was entitled to twenty-five percent of her ex-
husband's gross retirement pay, Mr. Callahan moved *pro se* to
clarify or modify the judgment.  Id.  He subsequently filed a
second motion, through counsel, for relief from judgment under
Vt. R. Civ. P. 60(b), claiming "he was ignorant of the pension
provision until he received a copy of the final order in March
2006," and he had relied on Mrs. Callahan's "representations that
the stipulation was the same as the Nevada divorce settlement at
the time he signed the document."  Id.  The court denied the
motion, finding that it has not been filed within a "reasonable

3

time" as required under Rule 60(b), and granted Mrs. Callahan's motion to enforce.  Mr. Callahan filed a direct appeal.

On appeal, the Vermont Supreme Court agreed that seven years was an unreasonable delay.  Id. at 676.  The court specifically cited the trial court's determination that Mr. Callahan "had ample opportunity to challenge [the pension provision] both before and after it was incorporated into the final order – either by filing a timely appeal, or by filing the motion to reopen in March 2006, when [Mrs. Callahan] began inquiring about the impending retirement payments . . . . "  Id. at 676.

The court also reviewed the merits of Mr. Callahan's claims. First, the court determined the lower court had acted within its discretion in 1999 when it denied a hearing on Mr. Callahan's motion to set aside the divorce stipulation.  The Court next affirmed the interpretation of the term "Air Force Pension" to mean Mr. Callahan's retirement pay.  This interpretation is, in part, the basis for Mr. Callahan's filing in federal court.

Mr. Callahan argued in state court that an ex-spouse's interest in military retirement pay is limited to a share of "disposable retired pay" pursuant to the Uniformed Services Former Spouses' Protection Act (Act), 10 U.S.C. § 1408 ("USFSPA").  The Vermont Supreme Court acknowledged this limitation, but held that the parties could contract otherwise, and were not "required to use the precise, federally defined term

4

of art, 'disposable retired pay,' to effectuate a legally binding agreement that in plain terms requires husband to pay a portion of his retirement pay to [his] wife." Id. at 677.  To the extent Mr. Callahan specifically contested the division of his *gross* income, as opposed to his retirement pay after certain deductions as set forth in the USFSPA, the court stated that the effect of the USFSPA was not "adequately briefed," and thus did not address the question.  Id. at 678 n.*.

The Vermont Supreme Court further rejected Mr. Callahan's claim that his wife's alleged misrepresentations about the contents of the stipulation entitled him to equitable estoppel, and his claim that the family court was authorized to award only that portion of his retirement pay attributable to the years in which he was married.  Finally, the court declined to consider whether the Rule 60(b) filing period was tolled by the SCRA, since that issue had not been argued below.  Id. at 677-78. "Furthermore," the court held, "husband cannot prevail on the merits of his 60(b)(6) motion, even if we were to determine that the motion was timely filed, and therefore we need not consider his tolling argument."  Id. at 678.

After his appeal was denied, Mr. Callahan moved the family court to clarify the question of whether his ex-wife was limited to twenty-five percent of his retirement pay after certain deductions.  The family court denied the motion, ruling that the

issue had already been decided by the Vermont Supreme Court, and
was, therefore, the "law of the case."  Mr. Callahan appealed,
and the Vermont Supreme Court affirmed on the same ground.
<u>Callahan v. Callahan</u>, No. 2009-117, slip op. at 1-2 (Vt. Aug.
Term 2009) ("<u>Callahan II</u>").

Mr. Callahan filed his Complaint in this Court on June 14,
2010.  He claims the state court's divorce order violates federal
law, and that "[t]he Vermont Supreme Court refused to entertain
the matter."  (Doc. 1 at 3.)  He also claims Vermont lacked
personal jurisdiction over him, and that he should have been
protected from "legal action" by the SCRA.  For relief, he asks
that "the divorce decree be set aside due to lack of
jurisdiction, due to the Soldiers and Sailors Act and or
Servicemembers Civil Act; or in the alternative, that any
division of military pension be based upon [<u>Mansell v. Mansell</u>,
490 U.S. 581 (1989)][1], and not on the gross proceeds of
Plaintiff's pension."  (Doc. 1 at 4.)

Mrs. Callahan, through counsel, has moved to dismiss,
arguing first that this Court is jurisdictionally barred under
the <u>Rooker</u>-<u>Feldman</u> doctrine from reviewing the family court
judgment.  She also argues that Mr. Callahan had to affirmatively

---

[1] In <u>Mansell</u>, the U.S. Supreme Court held that "the former
Spouses' Protection Act does not grant state courts the power to treat
as property divisible upon divorce military retirement pay that has
been waived to receive veterans' disability benefits."  490 U.S. at
594-95.

invoke the protections of the SCRA, and failed to do so.
Finally, Mrs. Callahan contends that the divorce decree was
valid, as it reflected the agreement of the parties.

Discussion

"Under the <u>Rooker</u>–<u>Feldman</u> doctrine, federal district courts
lack jurisdiction over suits that are, in substance, appeals from
state-court judgments." <u>Phillips ex rel. Green v. City of New
York</u>, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal
quotation marks omitted); <u>see</u> <u>generally</u> <u>D.C. Court of Appeals v.
Feldman</u>, 460 U.S. 462, 482–86 (1983); <u>Rooker v. Fid. Trust Co.</u>,
263 U.S. 413, 415–16 (1923). This is because Congress has vested
only the United States Supreme Court with jurisdiction to review
state court decisions. 28 U.S.C. § 1257.

The Supreme Court has recently underscored that
<u>Rooker</u>–<u>Feldman</u> is a "narrow doctrine." <u>Lance v. Dennis</u>, 546 U.S.
459, 464 (2006) (per curiam). It deprives district courts of
subject matter jurisdiction only in "cases brought by state-court
losers complaining of injuries caused by state-court judgments
rendered before the district court proceedings commenced and
inviting district court review and rejection of those judgments."
<u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284
(2005).

After <u>Exxon Mobil</u>, the Second Circuit reexamined
<u>Rooker</u>–<u>Feldman</u> and made clear that

7

> there are four requirements that must be met before the
> Rooker-Feldman doctrine applies: "First, the
> federal-court plaintiff must have lost in state court.
> Second, the plaintiff must complain of injuries caused
> by a state-court judgment.  Third, the plaintiff must
> invite district court review and rejection of that
> judgment.  Fourth, the state-court judgment must have
> been rendered before the district court proceedings
> commenced - i.e., Rooker-Feldman has no application to
> federal-court suits proceeding in parallel with ongoing
> state-court litigation."

Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (alterations

and internal quotation marks omitted) (quoting Hoblock v. Albany

Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005)).  The

first and fourth requirements are "procedural," while the second

and third requirements are "substantive."  Hoblock, 422 F.3d at

85.  If a claim meets all four requirements, the Court will

dismiss it for lack of jurisdiction.  When analyzing a

jurisdictional argument, the Court may look at evidence extrinsic

to the pleadings.  See Phifer v. City of New York, 289 F.3d 49,

55 (2d Cir. 2002); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006,

1011 (2d Cir. 1986).

Mr. Callahan's claims in this case meet all four

requirements for the application of the Rooker-Feldman doctrine.

First, it is plain that Mr. Callahan was a "state court loser."

Initially, he was unsuccessful in his effort to have the divorce

stipulation set aside prior to the entry of a final judgment.

His subsequent efforts to re-open the judgment and to have the

pension question clarified were equally futile, both in the trial courts and on appeal.

Second, Mr. Callahan complains of injuries caused by the state courts. Although he initially agreed to the terms set forth in the divorce stipulation, Mr. Callahan subsequently fought to have it set aside after he learned additional details about his wife's living situation. The Second Circuit has held that a plaintiff's injuries are not "caused by a state court judgment" when the state court "simply ratified, acquiesced in, or left unpunished" the actions of a third party. Hoblock, 422 F.3d at 85. Here, the state courts did not simply ratify the parties' stipulation, instead refusing to set it aside prior to judgment, and subsequently denying Mr. Callahan's efforts to have the divorce judgment re-opened.

Third, Mr. Callahan is asking this Court to revisit and either vacate or revise the state court judgment. His prayer for relief specifically asks the Court to "set aside" the divorce decree due to lack of jurisdiction, or, in the alternative, to order a revision to the pension distribution provision. As the Supreme Court stated in Exxon Mobil, "[a]mong federal courts, the Rooker Court clarified, Congress had empowered only [the Supreme] Court to exercise appellate authority 'to reverse or modify' a state-court judgment." 544 U.S. at 284 (quoting Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)). Fourth, and

finally, the state court judgment was "rendered before the district court proceedings commenced."  Exxon Mobil, 544 U.S. at 284.

Mr. Callahan claims this Court must undertake the pension question because it involves a question of federal law.  The Rooker-Feldman doctrine, however, is not limited to "state court judgments based solely on state law.  Even if the federal court collateral attack . . . is premised on . . . a federal statute, the Rooker-Feldman doctrine applies."  Powell v. Powell, 80 F.3d 464, 467 (11th Cir. 1996) (holding that to adjust monetary award to ex-spouse under USFSPA "would be to collaterally review[] and reverse[] [the state court's judgment] in federal court, which is precisely what the Rooker-Feldman doctrine exists to prevent."); see also Ashby v. Polinsky, 328 F. App'x 20 (2d Cir. 2009) (Rooker-Feldman doctrine barred Section 1983 action brought in response to state court foreclosure order).  The Court therefore finds that, pursuant to the Rooker-Feldman doctrine, it lacks subject matter jurisdiction over Mr. Callahan's claim.

Furthermore, Mr. Callahan's efforts to attack the state court judgments on jurisdictional grounds are without merit.  His first argument is the Vermont courts lacked jurisdiction over his person.  There is no indication in the Complaint or elsewhere that he raised this claim in the state courts.  Moreover, courts have held that "no exception to the Rooker/Feldman doctrine

10

exists when there is a challenge to the state court's personal jurisdiction or subject matter jurisdiction." In re Salem, 290 B.R. 479, 483 (S.D.N.Y. 2003) (citing Schmitt v. Schmitt, 165 F. Supp. 2d 789, 796-97 (N.D. Ill. 2001); Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972)).

Mr. Callahan also argues that under the SCRA, the divorce action should not have proceeded while he was on active duty overseas.[2] The relevant provision in the SCRA states that when a plaintiff or defendant is in military service and has received notice of the action or proceeding, the court "may on its own motion and shall, upon application by the servicemember, stay the action for a period of not less than 90 days . . . ." 50 U.S.C. app. § 522(b). It is clear from the record that Mr. Callahan had notice of the divorce proceeding, yet there is no indication he ever moved for a stay under the SCRA. Indeed, the only SCRA issue mentioned in the state court decisions was a claim by Mr. Callahan, raised for the first time on appeal, that the statutory period for bringing a Rule 60(b) motion should have been tolled pursuant to the SCRA. Callahan I, 958 A.2d at 678. As the state court was not compelled to issue a stay absent a request from Mr.

---

[2]   Mr. Callahan references both the SCRA and the "Federal Soldiers and Sailors Act (SSCRA)." (Doc. 1 at 3.) The SSCRA, commonly known as the Soldiers' and Sailors' Civil Relief Act of 1940, was the statutory predecessor to the SCRA. Cronin v. United States, 2011 WL 1204717, at *5 n.9 (Fed. Cl. March 31, 2011).

Callahan, belated reliance upon the SCRA does not authorize voiding the state court judgment.

<u>Conclusion</u>

For the reasons set forth above, the Court lacks subject matter jurisdiction either to revoke or revise the state court's divorce judgment.  Mrs. Callahan's unopposed motion to dismiss (Doc. 6) is therefore GRANTED, and this case is DISMISSED without prejudice.

Dated at Brattleboro, in the District of Vermont, this 23rd day of May, 2011.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge